# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| DANIEL EDWARD RULO, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 14-0437-CV-W-GAF-P |
| ) | |
| JAY CASSADY, ) | |
| ) | |
| Respondent. ) | |

## OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS, AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY

Petitioner, Daniel Rulo, filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254 on May 8, 2014, seeking to challenge his 2008 convictions and sentences for first-degree robbery and tampering with a motor vehicle,[1] which were entered in the Circuit Court of Boone County, Missouri.

The petition raises thirty-one (31) Grounds for relief. For the sake of clarity, this Court will adopt the respondent's categorization of the claims, which is sorted by actor. In Ground 1, petitioner asserts that direct appeal counsel was ineffective for failing to: (a) raise the issue of sufficiency of the evidence of robbery; (b) contact petitioner to see if there were more grounds petitioner wanted to have included in the brief; (c) appeal the robbery or tampering convictions; (d) react to the state filing out of time after the notice of appeal; and (e) file a complete copy of the legal file with the appellate court. In Ground 2, petitioner asserts that trial counsel was ineffective for: (a) failing to raise the issue of sufficiency of the evidence of robbery; (b) failing to inquire of two venire members whether they knew petitioner's wife under another name; (c) failing to arrange for petitioner to plead guilty to the state's ten year offer; (d) failing to call Lauren Leavell as a witness at trial; (e) failing to cross-examine the state's witnesses; (f) failing to interview the state's witnesses; (g) telling jurors petitioner was "at fault, and not good people"; (h) failing to let petitioner look at the jury list; (i) failing to ask in voir dire if anyone knew petitioner under another name; (j) failing to supply petitioner with a notepad; (k) failing to spend time with

---

[1] The petition also challenges a conviction and sentence for careless and imprudent driving, however, because petitioner has completed service of that sentence it is not cognizable on federal habeas review. See 28 U.S.C. § 2254(a).

petitioner before trial; (l) telling petitioner he would have to lie about not wanting witnesses at trial or risk losing; (m) failing to depose witnesses; (n) failing to subpoena witnesses from out of state; (o) failing to allow petitioner to enter into an open plea; (p) resetting the trial date over petitioner's objection ; (q) failing to communicate with petitioner about how long trial would last; (r) failing to make any objections; (s) failing to include a jury instruction on second-degree robbery; (t) being biased because he knew the victim; and (u) failing to object to surprise exhibits.  In Ground 3, petitioner asserts that the motion court erred in denying petitioner the ability to represent himself in his post-conviction proceedings.  In Ground 4, petitioner asserts that the trial court erred in: (a) overruling the motion for acquittal; (b) letting petitioner be charged with first-degree robbery; (c) overruling the motion for new trial; and (d) overruling petitioner's request for access to the law library. (Doc. No. 1, pp. 15-18).

Respondent contends that Ground 3 is not cognizable for federal habeas review.  Further, respondent contends that Ground 1(a) is meritless and that Grounds 1(b)-1(e), 2, and 4 are procedurally barred and, alternatively, are also meritless.

## FACTUAL BACKGROUND

The Missouri Court of Appeals summarized the facts as follows:

> On October 20, 2006, Tony and Marie Sloan parked their vehicle in a parking garage on the campus of the University of Missouri.  Scott Rampy, his wife, his daughter, and his daughter's boyfriend, Blake Bornkessel, also parked in the same garage near the Sloans' vehicle.  At approximately 8:45 p.m., the Rampy's and Bornkessel returned to the parking garage.  When they walked to the Rampy's vehicle, Bornkessel saw that there was a blue Ford Taurus parked perpendicular to their vehicle.  Suddenly, [petitioner] ran out from between two vehicles clutching something and got into the passenger side of the Taurus.  Rampy yelled out that "they took something" and "stop them."  In response, Bornkessel chased after the Taurus.  Bornkessel got in front of the Taurus in an effort to stop them.  The Taurus gradually pushed Bornkessel into the intersection and then backed up and swerved around Bornkessel.  Bornkessel could see that an older woman was driving the Taurus.  Bornkessel caught up to the Taurus and stood in front of it again.  This time the Taurus accelerated, forcing Bornkessel to jump on the hood.  The Taurus continued accelerating with Bornkessel on the hood through campus.  Eventually, Rampy caught up to the Taurus and was able to get other vehicles to block-in [petitioner's] vehicle to keep it from moving.  Bornkessel got off the hood, but the Taurus then drove into oncoming traffic, over a sidewalk, and through a lawn.
>
> University of Missouri Police Lieutenant Dennis Stroer arrived to the scene in

> time to see the Taurus driving on the sidewalk. Lieutenant Stroer stopped the vehicle and made contact with [petitioner]. [Petitioner] stated that he told his wife, the driver, "to get out of there" because "people were acting crazy." Both [petitioner] and his wife were placed under arrest. Bornkessel identified them as the people he chased from the parking garage. In [petitioner's] vehicle, police officers found Marie Sloan's purse, two small hammers, a glass of punch, and a Slim Jim.
>
> University of Missouri Police Officer Brian Frey responded to the parking garage and found that the front passenger window of the Sloans' vehicle had been broken out. When the Sloans returned to the parking garage they identified their vehicle, and Marie Sloan reported to Officer Frey that her purse had been stolen from the vehicle.
>
> [Petitioner] was charged with acting in concert to commit the crimes of tampering in the first degree, robbery in the first degree, and careless and imprudent driving.

(Doc. No. 9, Respondent's Exhibit E, p. 2-3).

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc 1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254 (e)(1).[2] Because the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## PROCEDURAL DEFAULT

Respondent contends that Grounds 1(b)-1(e), 2, and 4 are procedurally barred and, alternatively, are meritless. Petitioner did not raise any of his claims on direct appeal. Petitioner raised Ground 2(a)-(u) in his amended motion for post-conviction relief, however he failed to raise those claims in the appeal from the denial thereof. Petitioner did raise Grounds 1(a) and 3 in his appeal from the denial of post-

---

[2] "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

conviction relief, however, he procedurally defaulted all other grounds. Petitioner does not provide any excuse for his default other than to say that he did not raise the grounds because his attorneys did not raise them.

"A habeas petitioner is required to pursue all available avenues of relief in the state courts before the federal courts will consider a claim." Sloan v. Delo, 54 F.3d 1371, 1381 (8th Cir. 1995), cert. denied, 516 U.S. 1056 (1996). "In order to present a habeas claim to the state court, a prisoner must 'fairly represent' not only the facts, but also the substance of his federal habeas corpus claim . . . . Presenting a claim that is merely similar to the federal habeas corpus claim is not sufficient to satisfy the fairly presented requirement." Barrett v. Acevedo, 169 F.3d 1155, 1161-62 (8th Cir. 1999) (citing Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996), cert. denied, 517 U.S. 1215 (1996)), cert. denied, 528 U.S. 846 (1999). "If a petitioner fails to exhaust state remedies and the court to which he should have presented his claim would now find it procedurally barred, there is a procedural default." Sloan, 54 F.3d at 1381.

A federal court may not review procedurally defaulted claims "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 752 (1950). A petitioner "may establish cause for a procedural default . . . in two circumstances: where the state courts did not appoint counsel in the [initial post-conviction] proceeding for an ineffective-assistance-at-trial claim; and where appointed counsel in the [initial post-conviction] proceeding . . . was ineffective under Strickland v. Washington, 466 U.S. 668 (1984)." Martinez v. Ryan, 132 S. Ct. 1309, 1312 (2012).

"In order for ineffective assistance of counsel to itself be cause to excuse a procedural default, the ineffective assistance must rise to the level of an independent constitutional violation." Evans v. Luebbers, 371 F.3d 438, 445 (8th Cir. 2004) (citing Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000). "Thus, the assistance rendered must have been constitutionally substandard and prejudice must have resulted therefrom." Evans, 371 F.3d at 445 (citing Strickland, 466 U.S. at 687). Therefore, "[t]o overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-

counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the [underlying] claim has some merit." Martinez, at 1318.

In his reply, petitioner attempts to demonstrate legally sufficient cause for his procedural default by asserting that he raised all of his claims in his original Rule 29.15 motion, but that his attorneys refused to raise them in his amended Rule 29.15 motion and that the court refused to allow him to represent himself during those proceedings.[3] This assertion is insufficient to demonstrate legally sufficient cause per Coleman. Further, petitioner's argument could be interpreted as an attempt to invoke Martinez in order to demonstrate cause for his procedural default. However, because petitioner's post-conviction counsel raised Grounds 2(a)-(u) in his amended post-conviction relief motion, Martinez has no bearing on petitioner's default because Grounds 2(a)-(u) were not procedurally defaulted in the initial-review collateral proceedings.

Furthermore, petitioner has failed to show that a fundamental miscarriage of justice will result if his defaulted claims are not considered. See Abdi v. Hatch, 450 F.3d 334, 338 (8th Cir. 2006) (petitioner must present new evidence that affirmatively demonstrates that he is actually innocent of the crime for which he was convicted in order to fit within the fundamental miscarriage of justice exception), cert. denied, 549 U.S. 1036 (2006). Consequently, Grounds 1(b)-1(e), 2, and 4 are procedurally barred and will be denied.

### **GROUND 1(a)**

In Ground 1(a), petitioner claims that direct appeal counsel was ineffective for failing to raise a claim of insufficient evidence of first degree robbery. Petitioner raised this claim in his state post-conviction relief proceedings. The state appellate court denied it on the merits as follows:

> In his first point on appeal, [petitioner] argues that his appellate counsel was

---

[3] A review of the record reflects that the motion court initially declined to allow petitioner to represent himself because petitioner informed the court that he was not taking his "psych" medications. (Doc. No. 9, Respondent's Exhibit P, p. 5). Further, after multiple hearings and an examination the history of the case and the filings made by petitioner, the court determined that there had been "some abuse of the process" and that petitioner was not of sound mind to represent himself as a pro se litigant. Id. at 5-6. The court concluded that petitioner was not mentally capable of a knowingly, voluntary, or intelligently made waiver of counsel, per Missouri state law. Id. at 6.

ineffective for failing to challenge the sufficiency of the evidence supporting his first degree robbery conviction. He argues that the State failed to prove that he used or threatened to use a dangerous instrument in the robbery. When examining evidentiary sufficiency, the standard applied is "whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." State v. Letica, 356 S.W.3d 157, 166 (Mo. banc 2011). A sufficiency review does not assess whether the appellate court believes the evidence established guilt beyond a reasonable doubt, but whether any rational fact-finder could have found the essential element of the crime beyond a reasonable doubt. Williams, 386 S.W.3d at 754.

The evidence, viewed in the light most favorable to the verdict, shows that [petitioner] and his then wife, Laura, were involved in a robbery whereby a window of Gladys Sloan's vehicle was shattered and her purse was stolen from within the vehicle. Sloan's vehicle was located in a parking garage on or near the University of Missouri-Columbia campus. On October 20, 2006, Blake Bornkessel was returning to the parking garage with several other people when he observed [petitioner's] vehicle parked suspiciously behind Bornkessel's girlfriend's father's vehicle. Bornkessel testified at trial that as he was looking at [petitioner's] license plate, he observed [petitioner] quickly exit from the vicinity of Sloan's truck and duck down low behind [petitioner's] own car, "clutching something as he jumped in." Bornkessel testified that his girlfriend's father, Mr. Rampy, yelled, "They took something. Stop them." Bornkessel testified that, without thinking, he then ran and "beat the car to the stop sign," stood in front of the car, and "physically pointed at him and told him to stop." Bornkessel testified that the car then attempted to push him out of the way. [Footnote 2: The record reflects that Laura Rulo, [petitioner's] wife at the time, was driving the car.] Bornkessel testified that "[t]hey were hitting the gas and pushing me out in the intersection" and that the car pushed him about halfway out into the intersection. The car then backed up and went around Bornkessel and headed through the university campus. As traffic through campus was slow, Bornkessel chased the car and then jumped in front of the car again. Bornkessel testified that the car then pushed him until he got to the stop sign. At that point, the car continued to move forward until Bornkessel was forced to jump on the hood of the car to avoid going under the car. Bornkessel rode through campus on the hood of the car, as he testified that it was going too fast for him to get off. Ultimately, other cars stopped around [petitioner's] car, boxing [petitioner's] car in and allowing Bornkessel to get off the hood. The Rulos then drove into oncoming traffic, through some grass, and onto a sidewalk, where they were pulled over by University Police Officer Dennis Stroer. Sloan's purse was found in the floorboard of the Rulos' car.

To convict [petitioner] for robbery in the first degree, the State must prove that while forcibly stealing property, [petitioner] or another participant in the crime caused serious physical injury to any person, was armed with a deadly weapon, used or threatened the immediate use of a dangerous instrument against any person, or displayed or threatened to display what appears to be a deadly weapon or dangerous instrument. § 569.020, RSMo 2000. Here, pursuant to Instruction Number 7, by convicting [petitioner] the jury found that "in the course of retaining possession of the property, Laura Rulo or the defendant used or threatened the immediate use of a dangerous instrument against Blake

> Bornkessel."
>
> [Petitioner] concedes that an automobile may qualify as a "dangerous instrument" but argues that [petitioner's] or his accomplice's use of the car in this robbery did not elevate the car to the level of a dangerous instrument and only represented "force" used to retain stolen goods. We disagree. Certainly, automobiles are capable of causing bodily harm and/or death to pedestrians. Here, a reasonable juror could have found that using the car to push Bornkessel into an intersection on one occasion, and propelling the car such that Bornkessel was forced onto the hood to avoid being run over on another occasion, was using or threatening the use of a dangerous instrument. A reasonable juror could have also concluded that, by continuing to propel the vehicle at a speed that prevented Bornkessel from exiting the hood without injury, the car was used as a dangerous instrument. Thus, as there is no reasonable likelihood that the outcome of [petitioner's] appeal would have been different had counsel questioned on appeal the sufficiency of the evidence supporting that the car was used as a dangerous instrument, counsel was not ineffective for declining to raise the issue. Therefore, the circuit court did not clearly err in denying [petitioner's] 29.15 motion. Point one is denied.

(Doc. No. 9, Respondent's Exhibit P, pp. 3-5).

Because the state courts' determinations were not based upon "unreasonable determination[s] of the facts in light of the evidence presented in the State court proceeding[]s" or "an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" 28 U.S.C. § 2254(d)(1) and (2), Ground 1(a) will be denied, with prejudice.[4]

### **GROUND 3**

In Ground 3, petitioner asserts that the post-conviction motion court erred in failing to allow him to represent himself in his post-conviction relief proceedings. Respondent contends that petitioner's Ground 3 is not cognizable on federal habeas review. Federal habeas courts are only authorized to review the constitutionality of a state criminal conviction, not infirmities in a state post-conviction relief proceeding. <u>Mitchell v. Wyrick</u>, 727 F.2d 773, 774 (8th Cir. 1984) (alleged denial of effective assistance of counsel at Rule 27.26 hearing is not cognizable under § 2254). "Because there is no federal

---

[4] According to the concurrence of Justice O'Connor, joined by four other members of the Court, "under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000).

constitutional requirement that states provide a means of post-conviction review of state convictions, an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas petition." Williams-Bey v. Trickey, 894 F.2d 314, 317 (8th Cir. 1990). Consequently, Ground 3 will be denied.

## CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." Tennard v. Dretke, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. See 28 U.S.C. § 2254, Rule 11(a).

Accordingly, it is **ORDERED** that the petition for writ of habeas corpus is denied; the issuance of a certificate of appealability is denied; and this case is dismissed with prejudice.

 /s/ Gary A. Fenner_____
GARY A. FENNER
UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated:  April 17, 2015.